14101

GRAY v. C. P. WOFFORD & CO. *ET AL.*

(180 S. E., 675)

528

*Mr. J. Hertz Brown,* for appellant,

*Messrs. Perrin & Tinsley* and *Johnson & Johnson,* for respondent,

July 1, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

C. P. Wofford & Co. was a brokerage concern which had its principal place of business in Spartanburg. It sold and bought stocks and bonds for its customers for which services it collected commissions as fees. Suit was begun against it by E. B. Gray, one of its customers. Whereupon, on February 19, 1934, Judge Sease, by order, appointed Bernard Manning receiver of the corporation, and referred the cause, generally, to the Master of Spartanburg County, who was directed to receive proofs of claims against the corporation, and report the same with the amounts and order of priority.

The appellants, F. C. Newman and T. H. White, filed separate petitions, each of them alleging: "Your petitioner's said funds remained in said account so as to be capable of being traced therein from the time of said deposit—to the date of said receivership, and petitioner is advised that he is entitled to priority over other creditors in the bank balance in Spartanburg Cash Depository aforesaid."

This balance, amounting to $2,329.06, was in due course paid over to the receiver by the depository.

The Master held that as to all the creditors of C. P. Wofford & Co., that corporation stood in relation of trustee *ex maleficio,* and he denied the claim of priority made by Newman and White. This report was confirmed by order of Judge Sease.

None of the creditors of the defunct corporation appeal from the finding that the corporation stands to its creditors in the relation of trustee *ex maleficio.* But Newman and White appeal from the finding that they are not entitled to be paid in full for their claims in priority to the other creditors. The following facts appear from the record:

The assets of the defunct corporation which passed into the hands of the receiver consisted of two funds; one was an equity of $8,910.80 in certain securities held by Post & Flagg of New York as collateral to the account of Wofford & Co. with them. Appellants allege that this fund constitutes general assets of the estate and that their appeal does not in any way involve it.

The other fund is a deposit balance in the name of C. P. Wofford & Co. in the Spartanburg Cash Depository in the sum of $2,329.06.

Appellants state that their appeal involves their right to payment of their claims in full from this deposit bank balance, in priority of the claims of the other creditors of the corporation.

T. H. White delivered to C. P. Wofford & Co., on February 10, 1934, the certificate for 10 shares of the capital stock of International Shoe Company to sell and pay the proceeds of the sale to him. February 13, 1934, C. P. Wofford attached this stock certificate to its draft for $475.85 on Post & Flagg, its New York correspondent, deposited it in its bank, Spartanburg Cash Depository, and received a deposit credit therefor. On the same date Wofford & Co. issued to White its check for $473.85, the amount

of the proceeds of the sale of the stock less commissions. This check came into the Spartanburg Cash Depository the morning of February 19, 1934, the day on which C. P. Wofford & Co. was placed in the hands of a receiver, and was by the bank charged to the account of Wofford & Co. Late in the morning of the same day, when the bank learned of the insolvency of C. P. Wofford & Co., the entry was erased and the amount left in the account of C. P. Wofford & Co.; this amount went into the hands of the receiver. The check was returned to White and has not been paid.

Prior to February 10, 1934, F. C. Newman delivered to C. P. Wofford & Co. a certificate for 50 shares of the capital stock of the Southern Railway Company to be sold by them for the benefit of Newman. February 10, 1934, Wofford & Co. attached this certificate to its draft for $1,655.00 on Post & Flagg, its New York correspondent, deposited the draft in its bank account in Spartanburg Cash Depository, and received credit for that amount on its account. February 13, 1934, C. P. Wofford & Co. issued to Newman its check on said bank in the sum of $1,649.75, the amount of the proceeds of the sale of the stock less commissions. This check was never cashed.

The Master found in his report that: "The testimony of Mr. C. P. Wofford, President of C. P. Wofford & Company, reveals that the securities of all its customers were mingled into the general brokerage account carried with Post & Flagg, and that all of the money received from the customers, or from the sale of securities, whether authorized or un-authorized, went into the bank account of C. P. Wofford & Company at the Spartanburg Cash Depository. I find, therefore, in the beginning a common trust into which the funds and securities of all customer creditors merged and mingled."

He further found: "No one would contend but that any of the claimants seeking preferences would be entitled to a preference in the distribution of the assets of an ordinary corporation in receivership where the great mass of creditors

were general or simple contract creditors. In the case under consideration, however, the customer creditors of C. P. Wofford & Company, who compose the vast majority of all the creditors, fall squarely within a 'preferred classification as *cestuis que trustent* of trusts arising *ex maleficio,* and are entitled to no preference one against the other in the distribution of the assets in the hands of the receiver. * * * It has been agreed that no distinction is to be made between the customers accounts and the general creditors in the distribution of the receivership estate."

He recommended that the assets in the hands of the receiver be distributed without preference.

These findings and recommendations were concurred in and confirmed by the Circuit Court.

The appellants concur in the findings that all the customer creditors are in the classification of *cestuis que trustent* of a trust arising *ex maleficio,* in the general assets. But they contend that they have a prior claim, which entitles them to be paid in full from the fund, $2,329.06, which was in the Spartanburg Cash Depository and which was turned over to, and is now in the hands of the receiver. Appellants' counsel state the proposition upon which they rely in this wise:

"It is respectfully submitted that the proof clearly establishes that each appellant has traced and distinguished his property in the hands of the receiver in the form of the bank deposit in which he claims priority.

"The proof establishes: (1) that each appellant delivered his property to the corporation for the express purpose of having the corporation sell it and turn over the proceeds to the respective owners (folios 7-11); (2) that the respective properties were sold and the proceeds of sale deposited in bank to pay the checks promptly issued to the respective appellants (folios 7-11, 12-19).

"The proof also establishes that those proceeds of sale remained in bank until turned over to the corporation's re-

ceiver (folio 15), unless the undisputed facts relating to what occurred on February 13, operated, as a matter of law, as a dissipation of a portion of those proceeds."

There are no questions of disputed law to be determined. The question is one of the applicability of the law. Concretely stated, appellants contend that when C. P. Wofford & Co. was put in the hands of the receiver on the 19th of February, there was in the bank account of the corporation in the bank depository the sum of $1,655.50, the proceeds of the sale of the stock of F. C. Newman deposited February 10, 1934; and there was in the said account the sum of $475.85, proceeds of the sale of the stock of T. H. White deposited February 13, 1934; which sums amount in the aggregate to $2,130.85. It is the claim of the appellants that these sums were paid over to the receiver by the bank, and are now in his hands. In the effort to prove their contention that they have traced the funds owing from the sale of their stocks into the hands of the receiver, they elect to start with the bank account of the insolvent corporation as of February 13, 1934. At the opening of business that day the corporation had to its credit the sum of $2,-058.19, including the sum of $1,655.00, proceeds of the sale of the Newman stock, deposited February 10th. February 13, 1934, the corporation deposited in the bank $475.85, proceeds of the sale of the White stock. The total credit with the bank was on the 13th of February, $2,534.04. On the same day two checks which amounted in the aggregate to $1,010.00 were charged against the account reducing it to $1,524.02. Necessarily, these checks were paid in part by the funds of the appellants. February 13th, the corporation had in its hands a check for $903.60, but it, along with $3.92 in currency, making $907.52, was deposited in the bank account of the corporation on February 14th. Appellants contend that inasmuch as the corporation intended to deposit these items on the 13th of February, they should be considered as having been deposited on that date, and

thus the bank account would be restored to a sum sufficient to pay the two checks of February 13th without invading the funds arising from the sale of appellants' stocks, and that this is proof that no part of the proceeds of the stocks of Newman and White were used for the purpose of the corporation. We confess that we are unable to follow this process of reasoning. It is indisputable that money arising from the sale of appellants' stocks actually did go to pay the checks drawn against the corporation February 13th. How does the fact that the corporation intended to deposit that day other funds, which it received from its New York correspondent, help the situation? It is a legitimate inference from the evidence of the situation of the corporation at this time, and the character of its business, that the check for $903.60 of Post & Flagg, deposited the 14th of February, was the proceeds of sale of stocks of other customers of the corporation. It would seem inequitable to allow this sum to be added to the funds which went into the hands of the receiver from the bank account of the corporation in order that these appellants may be paid their claims in full, while the one hundred other creditors of the defunct corporation must content themselves with the meager *pro rata* payments which they will get from the general assets.

The Master and the Circuit Judge are not in error in the disposition they have made of the case. The order of the Circuit Judge affirming the Master's report is a very brief one and does not go into the merits of the controversy, therefore, it need not be reported. Let the report of the Master be reported.

Appeal dismissed. Judgment affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker, and Fishburne, concur.